CASSEN *v.* CASSEN.

4-8179                               201 S. W. 2d 585

Opinion delivered April 28, 1947.

*Quinn Glover* and *Carl Langston,* for appellant.

*Price Shofner* and *Lee Cazort,* for appellee.

Ed. F. McFaddin, Justice. In this divorce suit, appellant is the wife, and appellee, the husband. They were married in Massachusetts in 1929, and have two children. In 1942, appellee filed a suit for divorce in Flórida on the ground of cruelty. The divorce was denied by the Florida Circuit Court, and that holding was affirmed by the Supreme Court of Florida on March 23, 1945, in the case of *Cassen* v. *Cassen,* 155 Fla. 768, 21 So. 2d 458.

The appellee came to Arkansas for a divorce. He arrived here on January 3, 1946, and rented a room by the week at a hotel in Little Rock. His suit for divorce was filed on March 6, 1946; and, until after his suit had been filed, he did not evidence by affirmative acts any intention to reside permanently in Arkansas. The appellant, a resident of Massachusetts, was summoned by warning order and notified by attorney *ad litem.* She appeared specially for the sole purpose of challenging the jurisdiction of the Arkansas court; and she claimed that the appellee was not a *bona fide* resident of Arkansas.

From a decree finding appellee to be a *bona fide* resident, and granting him a divorce, there is this appeal, which necessitates a re-examination of our holding in *Squire* v. *Squire,* 186 Ark. 511, 54 S. W. 2d 281, in the light of subsequent cases which likewise involved the question of *bona fide* residence as essential to jurisdiction of the court to grant a divorce.

In *Squire* v. *Squire, supra,* in speaking of a party who was granted a divorce, we said:

"She frankly admitted that she came to this State to obtain a divorce; that she would remain here if she could secure employment to support herself and child. Even though she moved to this State to bring a divorce suit and had the intention of leaving after the divorce was granted, this would not deprive the court of jurisdiction,

if she were actually and in good faith a *bona fide* resident for the period prescribed by the statute."

Before a person can become a resident of this state so as to have his marital status determined by the courts of this state, he must, in truth and in fact, be a *bona fide* resident of the state, as hereinafter defined. The following cases attest that this court had repeatedly indicated that the Squire case should be thus modified. In *Barth* v. *Barth,* 204 Ark. 151, 161 S. W. 2d 393, in denying a divorce, we held that *bona fide* residence was required. In *Gilmore* v. *Gilmore,* 204 Ark. 643, 164 S. W. 2d 446, we said: "In the instant case there was a want of jurisdiction if appellee were not a *bona fide* resident of Arkansas." In *Feldstein* v. *Feldstein,* 208 Ark. 928, 188 S. W. 2d 295, in denying a divorce, we said: "The evidence in this case is not sufficient to show that appellee ever became a *bona fide* resident of Arkansas."

In *O'Keefe* v. *O'Keefe,* 209 Ark. 837, 192 S. W. 2d 556, we quoted from *Mohr* v. *Mohr,* 206 Ark. 1094, 178 S. W. 2d 502, as follows: " 'Without lengthening this opinion to analyze the holdings of other courts, we hold that there must be overt acts sufficient to demonstrate a real and *bona fide* intent to acquire residence here before the State of Arkansas—as a silent third party to every divorce suit here—will allow its courts to be used as the haven of the transient and dissatisfied spouse.' "

In *Porter* v. *Porter,* 209 Ark. 371, 190 S. W. 2d 440, we expressly stated that *Squire* v. *Squire* had become a controversial holding. In *Tarr* v. *Tarr,* 207 Ark. 622, 182 S. W. 2d 348, Mr. Justice KNOX, in his splendid dissenting opinion, pointed to the conclusion we are now reaching in the present case.

A divorce decree in this state, to fulfill all the requirements for full faith and credit under the United States Constitution, can determine status only when there is a *bona fide* residence in this state. We quote from § 111 of the American Law Institute's Restatement of the Law on Conflict of Laws: "A state cannot exercise

through its courts jurisdiction to dissolve a marriage when neither spouse is domiciled within the state."

So, now, we overrule *Squire* v. *Squire, supra*,[1] insofar as it holds that a person who comes to this state for the purpose of obtaining a divorce and who does not have the *animus manendi* (which has always been held an essential ingredient of residence), may be said to be a *bona fide* resident of this state; and by "*bona fide* residence," we mean the same as domicile.[2] We quote from, and adopt as our own and as ruling in this state, the language of the United States Supreme Court in *Williams* v. *North Carolina*, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366:

"Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicile. *Bell* v. *Bell*, 181 U. S. 175, 21 S. Ct. 551, 45 L. Ed. 804; *Andrews* v. *Andrews*, 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366. The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this court nor any other court in the English-speaking world has questioned it. Domicile implies a *nexus* between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance. The domicile of one spouse within a state gives power to that state, we have held, to dissolve a marriage wheresoever contracted."

This essential as to *bona fide* residence, must exist, not only at the time the decree is rendered, but also must have existed at the time the suit was filed. *Parseghian* v. *Parseghian,* 206 Ark. 869, 178 S. W. 2d 49; *Porter* v. *Porter,* 209 Ark. 471, 190 S. W. 2d 440; *O'Keefe* v. *O'Keefe*, 209 Ark. 837, 192 S. W. 2d 556.

[1] An interesting discussion of the Squire case may be found in § 134, *et seq.*, "Arkansas Conflict of Laws," a volume published in 1938 by Dr. Robert A. Leflar, now Dean of the Law School of the University of Arkansas.

[2] See 17 Am. Juris. 278 and 279, "Divorce and Separation," §§ 249-50; 27 C. J. S. 644, *et seq.*, "Divorce," § 76; annotations in 106 A. L. R. 6 and 159 A. L. R. 496, "What Constitutes Residence or Domicile Within State for Purpose of Jurisdiction in Divorce." See, also, the article on "Extraterritorial Divorce" by Prof. Ernest G. Lorenzen in Yale Law Journal, Vol. 54, p. 799.

Tested by the rule of these cases, the appellant failed to prove that he was a *bona fide* resident of Arkansas at the time his suit was filed; and his subsequent affirmative acts, in an endeavor to establish such residence, cannot be allowed any retroactive effect. So, the decree of the chancery court is reversed, and the cause dismissed, with appellee to pay all costs of the chancery court and this court.

McHANEY, J. (dissenting). Appellee was granted a divorce from appellant by decree of June 27, 1946, on the ground of three years' separation without cohabitation, § 4381, sub-section seventh of Pope's Digest. That they have lived separate and apart, without cohabitation, for more than three consecutive years prior to this action is undisputed in this record. Appellant did not testify, in the action, either as to appellee's residence in this State, or as to the three years separation without cohabitation, and she offered no evidence in her behalf. It is also undisputed, in my judgment, that he has been a *bona fide* resident of this State for more than three months next before the decree herein and for two months next before the commencement of his action. Section 4386 of Pope's Digest so provides in this language: "The plaintiff, to obtain a divorce, must prove, but need not allege, in addition to a legal cause of divorce: First, a residence in the State for three months next before the final judgment granting a divorce in the action and a residence for two months next before the commencement of the action."

Appellee was asked on cross-examination the question, "When you left Florida, you came here entirely for the purpose of getting a divorce, didn't you?" and answered, "Not entirely, I intended to stay here." And again he was asked, "If you obtain a divorce in this court, what are your intentions? Are you going back to Florida, in other words?" and answered, "My intentions are staying here and going into the hotel business, as I have prospects of getting one of the hotels here in Little Rock to operate." He had been engaged in the hotel business in Florida prior to coming to Little Rock.

It is undisputed that he came to Little Rock on January 3, 1946. His suit for divorce was filed March 6, 1946, and the undisputed proof shows that he has resided here continuously from January 3, 1946. He has been living at the Gleason Hotel. Shortly after coming here he became a member of the Little Rock Lodge of Elks by transferring his membership in another lodge to this and was at the date of trial an officer in said Elks lodge, being night manager and is regularly employed. He has assisted the U. S. Marshal's office in the handling of prisoners and accompanied Deputy McBurnett on trips to several points in this State, being paid therefor by the Government.

I think this evidence is sufficient, in the absence of any showing to the contrary, that appellee is a *bona fide* resident of this State and has been for the period of time required by said statute. We have so held in several cases where the showing of *bona fide* was no greater, if as great, as here. *Carlson* v. *Carlson,* 198 Ark. 231, 128 S. W. 2d 242; *Brickey* v. *Brickey,* 205 Ark. 373, 168 S. W. 2d 845; *Buck* v. *Buck,* 205 Ark. 918, 171 S. W. 2d 939. In the Buck case, last cited, we said: "After a careful review of the record, we think it practically undisputed that appellee was a *bona* fide resident of this state, within the meaning of the statute (§ 4386, Pope's Digest) at the time he filed his suit, and at the time the decree was rendered. He came to this state on June 20, 1942; his suit was filed August 21, following, and the decree was rendered on November 2, 1942. The suit was filed in the Fort Smith District of Sebastian county. Immediately after coming to Fort Smith appellee established his residence at 717 North 13th street, secured employment and remained in Arkansas until after the decree was rendered.

"We think it clear, therefore, that appellee established his residence within the requirements of the statute."

In the Buck case we quoted from the Brickey case the following: "The ground chiefly relied on for the re-

·versal of the decree here appealed from is that appellee was not a *bona fide* resident of Benton county at the time of its rendition . . . He testified that he had become a resident of this state, and expected to reside here permanently, a condition which our ninety-day divorce law does not require, it being sufficient under this statute that he was a resident of the state for two months before filing suit for divorce and for one month thereafter before the rendition of the decree. Section 4386, Pope's Digest.''

*Squire* v. *Squire,* 186 Ark. 511, 54 S. W. 2d 281, the case now overruled by the majority opinion, about which more will hereinafter be said, and *Carlson* v. *Carlson, supra,* were cited to support the statement above quoted from the Brickey case.

In all the cases this court has held that actual and not constructive residence is essential. We so held when the residence requirement was one year. *Wood* v. *Wood,* 54 Ark. 172, 15 S. W. 459; *Vanness* v. *Vanness,* 128 Ark. 543, 194 S. W. 498; *Wood* v. *Wood,* 140 Ark. 361, 215 S. W. 681. We have continued to so hold in all the cáses arising under the statute here involved. The Squire case, *supra,* so holds, where we held that the plaintiff must be ''actually and in good faith a *bona fide* resident for the period prescribed by the statute.'' In that case the trial court, while of the opinion that the evidence was sufficient to establish a cause of divorce, dismissed the complaint on the ground ''that the plaintiff had no permanent intention on November 4, 1931, (the date she moved to Texarkana) and has no permanent intention at this time of making Arkansas her permanent home.'' In reversing that holding, by a unanimous decision, we held that the learned trial judge misconstrued the effect of the Act (71 of 1931, § 4386, Pope's Digest); that said Act does not provide that the plaintiff must have a ''permanent intention . . . of making Arkansas her permanent home.'' We also said: ''The law of divorce is purely statutory, and the General Assembly has enacted the statute under consideration. Whether it be good or bad

is not a question for the courts," and so we there said: "Even though she (appellant) moved to this State to bring a divorce suit and had the intention of leaving after the divorce was granted, this would not deprive the court of jurisdiction, if she were actually and in good faith a *bona fide* resident for the period prescribed by the statute."

It is this holding in the Squire case that is overruled by the majority, as I understand it, and not the holding that matters of divorce are purely statutory. It could not be the latter, because the writer of the majority opinion, to which I subscribed, in *Young* v. *Young,* 207 Ark. 36, 178 S. W. 2d 994, 152 A. L. R. 327, said: "While we as individuals may personally disapprove of the grounds of divorce as fixed by the Legislature and may view with alarm the passage of such a law as the one in question which is tending to make our state a haven for unfaithful spouses, still as judges we must remember that the divorce laws are made by the Legislature and until the Legislature repeals these laws the courts must interpret them in the words and spirit written."

That statement is entirely correct. The courts ought to "interpret them (these laws of divorce) in the words and spirit written." The Legislature has said, in plain and unambiguous language, that the plaintiff must prove, but need no allege "a residence in the State for three months . . . and a residence of two months next before the commencement of the action," and we have construed that to mean actual and not constructive residence. *Wood* v. *Wood, supra.* In other words, that the plaintiff must actually reside here, be a *bona fide* resident for the time prescribed. Divorce being purely statutory, as we are all bound to concede, the Legislature had the power to fix the time of the residence at whatever term it saw fit. For many years a residence of one year was required. In 1931, the Legislature changed the time from one year to two months to bring the action and three months before final decree. Our decision in the Squires case, *supra,* was rendered November 21, 1932.

Since the decision in that case there have been eight regular sessions of the Legislature, and no law has been enacted to change our interpretation of said Act, and, so far as I know, no bill has been introduced in an attempt to change it, and I think the sole power to change the law lies with the Legislature, and that this court has no power to do so. Yet it appears to me that the majority opinion amounts to judicial legislation. It is said therein that appellee "did not evidence by affirmative acts any intention to reside permanently in Arkansas". The Act does not require that he evidence any intention to reside permanently in Arkansas, but only for the time prescribed therein, and the requirement that he evidence an intention to reside here permanently is simply legislation.

The majority opinion states that "by *bona fide* residence, we mean the same as domicile." While the two terms are often used synonymously, in law they are entirely different. Webster gives the "law" definition of "domicile" as, "A residence at a particular place accompanied with an intention to remain there for an unlimited time; a residence accepted as a final abode; a home so considered in law. Under modern civilized systems, a person's civil status is determined by his domicile." It is then said, "A man can have but one domicile for one and the same purpose at any one time, though he may have numerous places of residence." Citing 37 N. J. Law, 492-495. Under the definition of "residence" it is said, "A person's place of residence may or may not be identical with his domicile, though the term *residence* is ordinarily used and legally construed as merely implying the fact of actual abode without reference to the intent necessary to constitute that abode as one's domicile." The Legislature used the word "residence" and not the word "domicile," and by holding that they mean the same, the majority opinion has amended the Act by judicial construction or legislation, which the Legislature for 16 years has by its silence declined to do. So, the law of divorce is no longer to be considered "purely statu-

tory," no longer to be interpreted "in the words and spirit written" by the Legislature.

Therefore, I am compelled to dissent from the majority holding. I think the decree should be affirmed. I am authorized to say that Mr. Justice FRANK G. SMITH and Mr. Justice HOLT concur in this dissent.